[S. F. No. 22114. In Bank. Dec. 20, 1965.]

MICHAEL PRICHARD, a Minor, etc., et al., Plaintiffs and Appellants, v. VETERANS CAB COMPANY, Defendant and Respondent; LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff in Intervention and Appellant.

Goldstein, Kopp & Skinner, Kopp & Skinner, Quentin L. Kopp and Alvin H. Goldstein, Jr., for Plaintiffs and Appellants.

L. F. Haeberle III, Marvin A. Jacobs and Don Friedman for Intervener and Appellant.

David Terreo for Defendant and Respondent.

McCOMB, J.—This cause was transferred here after decision by the District Court of Appeal, First Appellate District, Division Two. On further examination of the record, we adopt the unpublished opinion of that court prepared by Mr. Presiding Justice Shoemaker, with such omissions and additions as hereinafter appear, as and for the opinion of this court. As modified, it reads:

Plaintiff Michael Prichard, a minor, brought this action through his guardian *ad litem* to recover damages for personal injuries sustained when a motorcycle operated by him collided with a taxicab driven by Charles Cardwhell, during the course and scope of his employment with defendant, Veterans Cab Company. Plaintiff Dessadean Prichard, the mother of the minor plaintiff, sought to recover medical expenses incurred in the treatment of her son's injuries. The complaint alleged that the collision was proximately caused by Cardwhell's negligence in operating the taxicab.

Liberty Mutual Insurance Company, the compensation carrier for the minor plaintiff's employer, filed a complaint in intervention whereby it sought to recover from defendant disability payments and medical expenses paid to or on behalf of the minor plaintiff.

Defendant answered, denying the material allegations of the complaint and affirmatively alleging contributory negligence on the part of the minor plaintiff.

After a trial by jury, verdict and judgment were for the

defendant and against all three plaintiffs. They appeal therefrom.

Since defendant's efforts to locate its driver were unsuccessful, the testimony of the minor plaintiff constituted virtually the only evidence as to the precise manner in which the accident occurred.

Michael Prichard stated that on December 2, 1960, he was hired by the L. D. Caulk Company to make motorcycle deliveries to various locations in San Francisco, and occasionally in Daly City and San Mateo. Michael was then 17 years of age, and was licensed to operate a motorcycle.

The motorcycle used by him was leased by his employer from a shop located on Ellis Street. Michael stated that he would pick up the motorcycle at the shop each morning, and, after completing his deliveries, would return it to the shop each evening.

On December 9, 1960, Michael delivered some mail to the Rincon Annex Post Office on Mission Street at 6 or 6:15 p.m. Since this completed his duties for the day, he then headed back toward the motorcycle shop. It was dusk, and Michael had turned on the headlights of his motorcycle. He proceeded west on California Street, crossed Powell Street and continued toward Mason Street. He had traveled the same route before and knew that the California-Mason intersection was a busy one.

California Street slopes upward between Powell and Mason Streets, the grade being 11.39 per cent. Michael proceeded up the hill in second gear at a speed of approximately 15 miles per hour, which he subsequently increased to 20 or 25 miles per hour. When he had traveled approximately two thirds of the distance between Powell and Mason, he moved from the middle westbound lane into the lane nearest the center line in order to pass a truck which was double parked. He then returned to the middle westbound lane and continued at a speed of 15 or 20 miles per hour.

As Michael approached the crest of the hill, he observed an eastbound taxicab on the opposite side of the California-Mason intersection. The cab was partially in the crosswalk and partially in the intersection. Although the cab appeared stationary when Michael first saw it, he noticed immediately that it moved forward, crossed the double line dividing the eastbound and westbound lanes on California Street, and came to a stop. Michael assumed that the cab was about to make a left turn into Mason.

He admitted that if he had applied his brakes at this point, he could have stopped in ample time to avoid a collision. He nevertheless continued straight ahead at the same rate of speed. Although he had an unobstructed view of the cab, he "really didn't pay attention" to it. When he "happened" to look to the left, he saw that the cab had commenced its turn and was within 2 or 3 feet of him. He immediately accelerated his motorcycle and turned to the right, but was unable to avert a collision. Michael stated that the cab could not have been traveling faster than 5 miles per hour at the moment of impact. He estimated his own speed as 20 miles per hour. As a result of the collision, Michael sustained a fracture of the left leg.

Knud Nielsen, the passenger in the taxicab, testified that he was searching his pockets for change immediately prior to the accident, and did not see the approaching motorcycle. He was able to state only that the cab was in the process of making a left turn at the time of the collision, and had passed through the crosswalk. The force of the impact caused his head to strike the ceiling.

█ Plaintiffs first contend that the evidence was insufficient to support the verdict for defendant. This contention is wholly without merit.

Assuming that negligence on the part of the taxicab driver was shown, it is nevertheless apparent that the testimony of the minor plaintiff comes close to establishing contributory negligence as a matter of law. According to his own testimony, Michael entered an intersection, which was familiar to him and which he knew to be a busy one, at a speed of 15 or 20 miles per hour.

Although he observed that an oncoming cab was about to make a left turn across his path and although he could admittedly have applied his brakes in ample time to avoid a collision, he chose not to exercise the least modicum of caution, and continued onward at the same rate of speed while paying no further attention to the cab.

In view of this overwhelming evidence of negligence on his part, it cannot be doubted that the verdict for defendant was an infinitely fair and reasonable one.

█ Plaintiffs next assert that the trial court erred in refusing to give their requested instruction, based upon BAJI 147, to the effect that a child is not held to the same standard of conduct as an adult and is only required to

732

exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience.[ ][1]

[The court did not err in refusing to give plaintiffs' proposed instruction. An exception to the general rule on a child's standard of care arises where a minor engages in an activity which is normally undertaken only by adults, and for which adult qualifications are required. The age of a minor who operates a motor vehicle will not excuse him from liability for driving it in a negligent manner, and he will be required to meet the standard established primarily for adults. (*Neudeck* v. *Bransten*, 233 Cal.App.2d 17, 21 [3] [43 Cal.Rptr. 250] ; *Elliot* v. *Jensen*, 187 Cal.App.2d 389, 394 [6] [9 Cal.Rptr. 642] ; see Rest.2d Torts, § 283A, com. c; 97 A.L.R.2d 872; 2 Harper and James, The Law of Torts (1956) § 16.8, p. 927; Fleming, The Law of Torts (1957) p. 131; Prosser, The Law of Torts (3d ed. 1964) § 32, pp. 159-160; cf. *Dellwo* v. *Pearson*, 259 Minn. 452 [107 N.W.2d 859, 863, 97 A.L.R.2d 866].)

Contrary rulings in *Goodwin* v. *Bryant*, 227 Cal.App.2d 785 [39 Cal.Rptr. 132] ; *Shmatovich* v. *New Sonoma Creamery*, 187 Cal.App.2d 342 [9 Cal.Rptr. 630] ; and *Gunter* v. *Claggett*, 65 Cal.App.2d 636 [151 P.2d 271], are disapproved.

*Lehmuth* v. *Long Beach Unified School Dist.*, 53 Cal.2d 544 [2 Cal.Rptr. 279, 348 P.2d 887], is clearly distinguishable on its facts and does not support plaintiffs' contention that an instruction on a child's standard of care should have been given in the present case.

In *Lehmuth*, pedestrians on a sidewalk were injured when a trailer, which was not equipped with a safety chain, broke loose while being towed by a car driven by a minor college student. Actions against the school district, the student body of the college, and the student driver were consolidated for trial. The jury was instructed on Vehicle Code requirements for safety chains on trailers and was also instructed that a child is not held to the same standard demanded of adults even though statutory violations are involved.

The latter instruction referred to the minor defendant's failure to use the prescribed safety chain, not to his negligent driving, and since the jury found that the proximate cause of

---

[1][ ]Brackets together in this manner are used to indicate deletions from the opinion of the District Court of Appeal. Brackets enclosing the material below (óther than editor's added parallel citations) are used to denote insertions or additions by this court.

the plaintiffs' injuries was the school district's independent negligence in failing to properly supervise members of the student body while using school property, the minor driver was exonerated.]

■ Plaintiffs' third and final contention is that the court erred in admitting evidence of other claims and accidents involving Michael. An examination of the record discloses that during cross-examination of Michael, defense counsel elicited testimony that Michael had injured his left knee and ankle in a 1958 motorcycle accident, had brought suit to recover damages for said injuries, and had purchased a series of cottages with the proceeds of said action; that he had injured his forehead in a 1962 accident of an unspecified nature; and that he had been involved in a minor motorcycle accident near Stern Grove during the week preceding the collision with defendant's taxicab. Michael was also questioned at length with regard to an arrest for speeding which allegedly occurred when he was operating his motorcycle near Kezar Stadium on February 4, 1961. He denied having any recollection of such an incident. Pursuant to the stipulation of the parties, the jury was subsequently informed that on the date in question he had operated an automobile, rather than a motorcycle, in the vicinity of Kezar Stadium.

Plaintiffs rely upon *Shmatovich* v. *New Sonoma Creamery,* *supra,* 187 Cal.App.2d 342; *Browning* v. *King,* 159 Cal.App. 2d 326 [324 P.2d 14]; *Coleman* v. *Southern Pac. Co.,* 141 Cal.App.2d 121 [296 P.2d 386]; and *Lowenthal* v. *Mortimer,* 125 Cal.App.2d 636 [270 P.2d 942], as authority for the rule that evidence of prior accidents, traffic offenses, claims or lawsuits is generally inadmissible in a civil action arising out of a motor vehicle accident, since such evidence is immaterial in the determination of the driver's negligence on the occasion in question.

In the instant case, however, the evidence pertaining to the 1962 accident and the motorcycle accident near Stern Grove was admitted without objection. Under such circumstances, plaintiffs have waived the right to assert on appeal that said evidence was erroneously admitted.

■ Although counsel did interpose several objections to the questions concerning the 1958 motorcycle accident, the evidence sought to be elicited was relevant for a purpose other than establishing negligence on Michael's part. Immediately prior to the questions complained of, Michael had

testified on direct examination that as a result of the collision with defendant's cab, he still experienced pain in his left shin bone and cramping of the calf muscles of the left leg. He also stated that he was still performing certain exercises which his doctor had prescribed to strengthen his calf muscles. On cross-examination, defense counsel asked Michael to demonstrate the exercise in question, and then asked him whether the same exercise had not been prescribed after a 1958 accident. After the court had overruled an objection by Michael's counsel, the witness admitted that his doctor had prescribed the exercise "both times." Defense counsel then went on to develop that Michael had injured his left knee in a 1958 motorcycle accident, and that when he brought suit to recover for said injury, he had alleged severe permanent injuries of the left knee and other permanent injuries not presently diagnosed. Since this evidence was clearly relevant to the issue of damages, the trial court properly overruled any objections thereto. The subsequent question whether Michael had not purchased some cottages with the proceeds of the 1958 action was clearly intended to challenge his prior testimony that he had taken the job with the L. D. Caulk Company in order to earn money for college. In any event, plaintiffs did not object thereto.

The questions concerning Michael's 1961 arrest for speeding were asked immediately after he had denied having operated any vehicles in February 1961. Plaintiffs again interposed no objections to this line of questioning, but subsequently moved to strike said evidence on the ground that Michael had in fact been operating an automobile rather than a motorcycle on the day in question. The court denied the motion to strike, on the ground that the evidence had some bearing upon Michael's activities and physical limitations subsequent to the collision with defendant's cab. The jury was then informed, pursuant to the parties' stipulation, that Michael was operating an automobile rather than a motorcycle on the day in question.

Since the evidence complained of was of some relevance (*Lowenthal* v. *Mortimer, supra,* 125 Cal.App.2d 636, 639) and had already been admitted without objection, the denial of the motion to strike was within the court's discretion.

In any event, even if it could be said that the denial of said motion was error, it is extremely unlikely, in view of the strong evidence of negligence on Michael's part, that a

different verdict would have resulted in the absence of such a ruling, and reversal of the judgment is not required. (Cal. Const., art. VI, § 4½.)

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.